580 So.2d 1104 (1991)
John C. GUILLOT, Jr.,
v.
Steven MILLER, State Farm Mutual Automobile Insurance Company, Gregory A. Guillot and Allstate Insurance Company.
No. 90-CA-0998.
Court of Appeal of Louisiana, Fourth Circuit.
May 30, 1991.
*1105 Laurence D. Cohen, Morris Bart and Associates, New Orleans, for plaintiff.
James S. Thompson, Dan Richard Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, John J. McGuckin, Jr., Metairie, for defendants.
Before BARRY, CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, John C. Guillot, Jr. appeals the quantum of damages determined by the jury in this personal injury cause of action. He argues that the trial court's rulings prejudiced him or that the jury abused its discretion in determining quantum.
This lawsuit arises out of an automobile accident which occurred on November 30, 1986 at the intersection of Paris Road and Judge Perez Drive in Chalmette, Louisiana. The accident occurred when a vehicle owned and operated by Steven Miller struck the rear of a van, with a boat and trailer in tow. Plaintiff, John C. Guillot, Jr., was a passenger in the van and filed the instant lawsuit claiming personal injuries. Mr. Guillot sued Steven Miller, Miller's automobile liability insurer, State Farm, Gregory Guillot (the driver of the van) and Allstate Insurance Company, as the uninsured motorist carrier of the van.
A jury trial was held on September 8, 1989 and following the trial of the matter, the jury returned a verdict in favor of John Guillot and against Steven Miller and State Farm, awarding him $10,000.00 in general damages and $2,000.00 in special damages. Guillot filed his Petition and Order for Appeal on November 9, 1989.
In his first assignment of error, Guillot cites Glover v. Southern Pipe and Supply Company, 408 So.2d 352 (La.App. 4th Cir.1981) writ denied 412 So.2d 86 (1982) to argue that defendant's video did not meet the standard for admission of moving pictures. Guillot quotes:
Evidence in the form of moving pictures must be used with great caution because such pictures show only very brief intervals of the activities of the subject. They do not show rest periods, they do not reflect whether the subject is suffering pain and they do not show the after effects of the activities.
id at 356.
Guillot maintains that the trial court failed to exercise great caution because it *1106 denied his request to first view the videotape in camera. Guillot claims the videotape should have been found inadmissible because it lacked impeachment value where there was no discrepancy between his testimony and the videotape. Further, Guillot argues that the videotape was inadmissible because it was edited. A review of the tape showed times transposed (i.e. 12:58 pm then, 1:00 pm, then, 12:59 pm). Guillot insists that not only was the video irrelevant but it had an unduly prejudicial impact on the jury.
Guillot's arguments have no merit. Guillot alleged that he was unable to engage in activities of a physical nature. He also testified that he had planned to start a fishing guide service before the accident but unfortunately the accident and his resulting injury prevented him from ever doing so. Throughout his testimony he maintained he was physically unable to perform those activities that a fishing guide would be required to perform. He denied owning any boats in 1988 and specifically denied performing any fishing guide services in 1987, 1988 or in 1989 with the exception of one occasion which occurred approximately six weeks prior to the trial.
For impeachment purposes, defendants called two witnesses, Larry Scott and Steve Owens, both private investigators hired by defendants to do surveillance work regarding Guillot's activities. Each of these gentlemen took videos of Mr. Guillot and in connection with their testimony at trial, the videotapes were offered and introduced into evidence. Of note the tapes were shown to the jury after both gentlemen testified that in August and September of 1988 they witnessed Mr. Guillot performing certain physical activities that he had denied being able to do in his earlier deposition.
Larry Scott testified that from August 15, 1988 through August 16, 1988 he parked a mobile home near Mr. Guillot's residence and observed his comings and goings. He stated that he never observed Mr. Guillot having any difficulty in moving, bending, or with any of his chores, and Mr. Guillot never wore his back brace. He stated that he received information that Mr. Guillot was providing a guide service out of a local marina, so on September 6, 1988 he had Steve Owens approach Mr. Guillot to inquire about his guide services. From the information received from Mr. Guillot, he returned on September 6, 1988 and on September 24-25, 1988. He testified that he personally witnessed Mr. Guillot take two men fishing. He observed Mr. Guillot prepare and launch a boat in conjunction with the men. His conclusion, after speaking with people in the Many, Louisiana area and after observing Mr. Guillot's actions, was that Mr. Guillot was gainfully employed as a bass and crappie guide, transportation, lodging, and catering, included.
Mr. Owens testified that Mr. Guillot told him he was a guide and that he charged $140.00 a day or $100.00 for a half day. He further stated that he was given a business card and was told that plaintiff was already "booked" for certain days in September for other fishing groups. Mr. Owens testified that plaintiff showed him three boats and he told him he owned the boats.
It was only after these two gentlemen had testified as to the contents of the videotapes and plaintiff's counsel completed his cross-examination, that the jury was allowed to view the tapes. Mr. Guillot requested that the trial judge first view the videotapes in camera. Clearly, the trial judge was convinced that no in camera inspection was warranted after he heard both investigators testify. The law is clear that a determination of whether motion pictures are admissible into evidence is largely within the discretion of the trial court. Ashley v. Nissan Motor Corp., 321 So.2d 868 (La.App. 1st Cir.1975) writ denied 323 So.2d 478 (La.1975). Further, the determination on the admissibility into evidence of videotapes is to be done on a case-by-case basis depending upon the individual facts and circumstances of each case. Douglas v. G.H.R. Energy Corp., 463 So.2d 5 (La.App. 5th Cir.1984) writ denied 477 So.2d 691 (La.1985). Here, there was simply no reason to hold a *1107 lengthy in camera inspection after investigators described what was on the videotapes and Guillot's counsel had already had the benefit of cross-examining these witnesses. The Glover case cited by Guillot simply stands for the proposition that the trier of fact cannot rely totally on limited surveillance films to deny a plaintiff complete recovery. Glover v. Southern Pipe and Supply Company, 408 So.2d 352 (La. App. 4th Cir.1981). In Glover, the film was brief and covered only a very short time span, whereas the present tapes were filmed over several days and are more lengthy.
The investigators' testimony, coupled with the videotape of the Guillot's activities, casts doubt as to the veracity of Mr. Guillot's earlier testimony regarding his activities. The videotape actually showed Mr. Guillot bending, stooping, walking up and down steps without using a handrail, jumping in and out of a boat, launching a boat and driving a boat on choppy waters.
Finally, Guillot asserts that the videotape was edited and that somehow this prejudiced the plaintiff. Mr. Guillot raised this issue, in the jury's presence, at the time the videotapes were shown. Initially, it should be pointed out that there were two cameras used for the surveillance of September 24-25, 1990. Mr. Scott explained that the two tapes were combined into one, but nothing was taken out or edited out. No such "intentional misrepresentation of the taping process" existed. Further, the jury had the ability to weigh Mr. Guillot's objections against admissibility in determining whether the videotapes cast doubt on his prior testimony.
In his second assignment of error, Guillot argues that the law and presumption regarding the failure to call a witness turns on what would reasonably be the content of that witness' testimony. He insists that the testimony of the physicians he failed to call would have only been cumulative. Therefore no presumptive charge should have been given. Cage v. Shainberg's Stores of La., 413 So.2d 564 (La.App. 1st Cir.1982).
The law is clear that if the plaintiff fails to call a treating doctor, then the jury may presume that the testimony of such doctor would have been adverse to the contentions of the plaintiff, unless it is overcome by credible evidence offered by plaintiff. Vidrine v. Sentry Indemnity Co., 341 So.2d 558 (La.App. 3d Cir.1977) writ denied 343 So.2d 202 (La.1977); Malbroux v. Guice, 322 So.2d 390 (La.App. 3d Cir.1975). Guillot testified that he sought no medical treatment for nearly five or six weeks after his accident. He finally saw Dr. Oosta in Many, Louisiana on at least one occasion. Dr. Oosta refilled Guillot's prescriptions for several months thereafter. Guillot testified that he kept a calendar of his back pain for 9 months, then he saw Dr. Oosta again. Therefore, this is not the scenario that plaintiff would have this Court believe i.e., that he saw Dr. Oosta only once. The truth of the matter is that Guillot admitted that he saw Dr. Oosta at least twice and Dr. Fox testified that Guillot had been under Dr. Oosta's care, and that Dr. Oosta was his treating physician in Many. Dr. Fox admitted that Dr. Oosta's testimony would have been very important to determine the cause of Mr. Guillot's continued complaints. Guillot failed to call Dr. Oosta as a witness.
Furthermore, Guillot testified that after he finished treatment with Dr. Fox, he sought treatment at the Veterans Administration Hospital for back problems. Guillot failed to call anyone from that hospital and apparently Dr. Fox had no knowledge of his treatment at the V.A. Hospital.
Dr. Fox admitted that he did not review Dr. Oosta's entire chart, but his understanding was that Dr. Oosta had continued to treat Mr. Guillot. Dr. Oosta's entire record was not introduced into evidence nor did he testify at trial. Thus, the jury was left with at least two of Mr. Guillot's treating physicians who were not called to testify on his behalf. This is the exact scenario to which the "adverse presumption" rule is meant to apply and the Cage case as cited by plaintiff simply has no application to the facts at bar.
*1108 In the Cage case the court of appeal clearly states: "With regard to the other doctors who examined plaintiff, including the doctors at the emergency room of the two local hospitals, the record indicates that their testimony would have been merely cumulative." All we have in the instant case is Guillot's allegations that the testimony is cumulative; there is no such indication in the record. The court in Cage went on to say that "the three doctors whose testimony was offered by plaintiff are all treating physicians and were the doctors who rendered the majority of the treatment received by plaintiff." supra at 567. Such being the case, Dr. Oosta should have been called to testify since clearly he was plaintiff's treating physician according to both plaintiff's own testimony as well as that of Dr. Fox.
Finally, had Mr. Guillot offered reasons at trial as to why he failed to call his other treating physicians he would not now be complaining that it was error for the court to give this presumptive charge.
In Guillot's final assignment of error, he argues that the jury's quantum verdict constitutes an abuse of discretion under Reck v. Stevens, 373 So.2d 498 (La. 1979). He argues that he endured pain and suffering for two years prior to trial and will continue to do so for the rest of his life as a result of this accident. $10,000.00 was clearly an inadequate sum to compensate his injuries.
Based on the errors that he has assigned, Guillot argues that legal or factual error interdicts the jury verdict. Guillot requests that this court undertake an independent evaluation of the record and exercise its own discretion to fix a de novo quantum award consistent with Suhor v. Gusse, 388 So.2d 755 (La.1980). Guillot argues in the event that we do not find an error of fact or law that we must find that the jury abused its discretion and we raise the award to the lowest point which is reasonable within the discretion afforded the court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Guillot cites Saucier v. Winn Dixie Louisiana, Inc., 499 So.2d 1033 (La.App. 3d Cir.1986) to support its position that at a minimum this court should award him $20,000.00.
Having found no factual or legal error in the trial court's judgment, we review the jury's award under the Coco standard or as to whether the jury abused its discretion in finding that plaintiff's general damages are worth only $10,000.00.
Guillot does not indicate how the jury abused its broad discretion considering that Mr. Guillot's own testimony was impeached by the testimony of Messrs. Scott and Owens. Furthermore Dr. Fox testified that the spasms Mr. Guillot suffered from were due in part to arthritic changes in his spine which pre-dated the accident. Dr. Fox stated such arthritic changes as Mr. Guillot has in his back are the types that can flare up and cause discomfort, especially after riding on a boat on a choppy lake. According to Dr. Fox spasms are more evident soon after an aggravation of the back. Dr. Fox found no strong evidence of any clinical findings suggesting nerve root involvement and Dr. Fox did not recommend any additional testing or surgery.
There was clearly a reasonable factual basis for the jury's findings in this matter and there was no "manifest error" in the actions of the trial judge. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La. 1973).
For the foregoing reasons, we affirm the trial court's judgment.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissents with reasons.
Plaintiff's assignment relative to the admissibility of video tapes is valid and warrants reversal.
A tape was taken by two private investigators. The court accepted the testimony of the private investigators as the predicate to admit the tapes into evidence. The plaintiff validly argues that the tapes were edited which can be seen from the time sequences on the tapes. Apparently the tapes were spliced out of sequence. Daniel *1109 Owens, one of the private investigators, admitted on cross examination that the tapes had been edited.
The plaintiff's request that the tapes be viewed in camera was improperly denied. The trial judge saw the tapes for the first time when they were shown to the jury.
The majority mistakenly distinguishes Glover v. Southern Pipe and Supply Company, 408 So.2d 352 (La.App. 4th Cir. 1981), writ denied 412 So.2d 86 (1982) because the Glover film "covered only a very short time span". The film here runs about 30 minutes. Glover especially warns that moving pictures must be used "with great caution" because they depict limited activities of the subject for very brief time intervals and do not reflect pain.
I agree with the majority that the admissibility of motion pictures is largely within the discretion of the trial court. Here, that discretion was not exercisedrather, the tapes were shown to the jury before the court exercised any discretion on their content.