638 So.2d 445 (1994)
Barbara DETILLIER
v.
David SMITH, the City of Westwego Volunteer Fire Department.
No. 94-CA-34.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 1994.
*446 James E. Shields, Gretna, for plaintiff/appellant.
Lynn L. Lightfoot, New Orleans, for defendant/appellee.
Before BOWES, DUFRESNE and WICKER, JJ.
WICKER, Judge.
This is an appeal in a lawsuit which arose out of a collision between a fire truck belonging to the City of Westwego and an automobile. The driver of the automobile sued, claiming neck, back and leg injuries. Following a four-day trial, a six-person jury absolved the defendants of liability. The plaintiff now appeals. We affirm.
Plaintiff is Barbara Detillier. Defendants are David T. Smith (a fireman of the Westwego Fire Department), the City of Westwego Volunteer Fire Department, and CIGNA Property and Casualty Company (the fire department's insurer).
Detillier testified that on August 8, 1990 she was in her automobile, waiting for a traffic signal in the left-turn lane at the intersection of Central Avenue and the Westbank Expressway in Westwego. When the green arrow came on, she looked in her rearview mirror and saw a fire truck in back of her. She denied seeing any flashing lights or hearing any siren from the fire truck. She figured the fire truck was going to turn left and she wanted to get out of its way as soon as possible. She hesitated for a second or two, looked to see if there was any oncoming traffic, then went on and made her left turn. As she was turning, the fire truck hit her car.
Plaintiff testified she tried to avoid the accident by turning her wheels to the right, but went over a curb. As she got out of her car, defendant Smith got out of the fire truck and asked her if needed an ambulance. She told him she was okay, only shook up. Then Smith said he was going to turn on the truck's lights so oncoming vehicles would be aware there was an accident; he got back in the truck and put on the flashing lights.
Smith's testimony regarding the accident differed significantly. He stated he was responding to a Signal 51-S alarm when the accident occurred. "51-S" indicates a structural fire, which requires a Code 3 response (i.e., flashing light and siren), so he pulled out of the station with lights and siren, going up Central toward the Expressway. He turned the siren off while traveling through the residential neighborhood in which the station is located, but used the lights and sirens to cross Lapalco Boulevard.[1]
After he crossed, he turned off the siren again and proceeded up Central to the Expressway. About 25 feet before the Expressway, he turned the siren back on. When he reached the Expressway the traffic signal had just turned green. There were two cars in front of him, which got out of the way, and he got behind plaintiff's car. Smith testified that plaintiff could not move to the left or the right because of oncoming traffic in both directions, so she waited for a green arrow.
When she got the green arrow, however, she did not turn immediately but just stayed there. Smith said he waited about five to ten seconds; he had the lights and siren on, and sounded the horn several times. When Detillier failed to move he proceeded to go around her on the left. It was still impossible to go to the right due to traffic. As he turned the truck left, he maneuvered into the right lane of the Expressway because the fire truck must make wide turns due to its size and weight. Smith stated he was looking in his mirror while making the turn and saw that Detillier was not turning, but when he was "almost straight into the lane" plaintiff's car hit the fire truck.
Smith stated that he did not wait longer for plaintiff to turn left because he was on an alarm"You don't know if somebody's in *447 there burning up, you can't sit there 20 minutes waiting for somebody to move."

ISSUES ON APPEAL
The first question on the jury interrogatories was, "Do you find David T. Smith and the Westwego Volunteer Fire Department at fault for the accident on August 8, 1990?" The jury answered "No." Because they found no liability, they did not answer the remaining interrogatories.
On appeal plaintiff contends that the jury was prejudiced and the prejudice resulted in the adverse verdict; that the prejudice was reversible error; that the defendants should have been found 100% at fault or at least assessed a percentage of fault; and that in the absence of prejudice the lowest amount of damages plaintiff would have received is $500,000.

JURY PREJUDICE
The issues concerning jury prejudice arise from the denial of plaintiff's motion for new trial, which urged that the verdict was clearly contrary to the law and evidence and grounded in bias and prejudice.
La.Code Civ.P. art. 1972 sets forth the peremptory grounds for granting a new trial as follows, in pertinent part:
"A new trial shall be granted ... in the following cases:
(1) When the verdict ... appears clearly contrary to the law and the evidence.
* * * * * *
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done."

A. Contact between Jurors and Defendant
Plaintiff asserts that on the third day of trial two jurors met defendant Smith at the elevator and one juror went to the bathroom at the same time as Smith. The implication of plaintiff's argument is that there was jury tampering. During the trial plaintiff filed a motion to determine whether jury sanctity had been abridged. The motion was supported by affidavits from two members of plaintiff's family who observed the incident.
Although the trial judge denied a hearing on the record, she interviewed the jurors in chambers, in the presence of both counsel, and determined that no prejudice had occurred.
Subsequently, when the motion for new trial was argued, the judge advised plaintiff's counsel:
"I did talk to those jurors at your insistence. They both assured me that there was no problems. And I will also tell you that when I talked to the jury afterwards, as I always do, the rest of the jurors were extremely curious as to why it had happened. And, it's my remembrance that none of them had a clue when I told them that anything like that had occurred."
Simple contact between a juror and an interested party is not sufficient to require the granting of a motion for new trial. Searle v. Travelers Ins. Co., 557 So.2d 321, 325 (La.App. 4th Cir.1990), and cases cited therein. New trial is mandated only on a showing that the jury misconduct was of such a grievous nature as to preclude the impartial administration of justice. Gormley v. Grand Lodge, 503 So.2d 181, 186 (La.App. 4th Cir.1987).
There is nothing in the record to establish that there was bribery, improper behavior or anything else that would have prevented impartial justice, nor has plaintiff alleged any specific acts that could be so construed. At best, plaintiff's argument appears to be that the jurors and defendant Smith walking down the hallway together presented a suspect appearance.
The trial judge's statements in denying the motion for new trial effectively refute any basis for plaintiff's challenge to jury sanctity.

B. Surveillance Video
In addition, plaintiff contends the jury was prejudiced by being shown a surveillance video of plaintiff, made by the defense during the course of the trial. The video showed plaintiff, outside the jury's presence, moving her head in a manner she had claimed she was unable to do.
*448 Plaintiff's counsel objected to the use of the video on the basis that he had no advance notice that it would be used to impeach the plaintiff's testimony. In addition, the video cameraman was allowed to testify to things and events that he did not film and which were not on the video, to the prejudice of plaintiff. Further, plaintiff argues that the prejudice created by the video was compounded because it was shown to the jury with defendants' medical expert, Dr. Carl Culicchia, sitting in the jury box along with counsel for all parties.
At the hearing of the motion for new trial the trial court addressed these contentions as follows:
"Number one, we did that video outside the presence of the jury. During that period of time, I sat in the jurybox; Doctor Culicchia sat in the jurybox. There is no time that anybody except the jury sat in that jurybox when the jury was in this courtroom. I would never allow that to occur. Nobody is going to sit with that jury during the time that they're in this courtroom in a trial. That is not what occurred. Doctor Culicchia did see it when I saw it.... I admitted it. We went through all of the things that we needed to do to get that admitted. And that was to do it outside the presence of the jury.
* * * * * *
"I'm alsoI feel compelled toto make the comment in this particular case that always in a trial we are after the truth. And the truth in this case is thatyour client could move. And she was moving at the time of the trial. She indicated to that jury that she could not, and yet, went outside during one of the days of the jury trial and could. Truth is what we're always after in this courtroom and in any other courtroom. I am never going to block the truth. And based upon all of those things your Motion for a New Trial is denied. This Court feels extremely strongly that this jury did what they should do. That there was ample evidence for them to come back with a verdict that they did."
The surveillance video had been made on the third day of trial by Joe Schembre, a private investigator hired by defense counsel. The tape was screened, out of the jury's presence, by the trial judge, counsel, and defendants' expert medical witness. Over objection by plaintiff's counsel, the trial judge then permitted the defense to show it to the jury. In addition, Joe Schembre was allowed to testify regarding behavior he observed that was not recorded on the video.
The video shows Mrs. Detillier on a lunch break during the trial. She exits and enters the courthouse, using a walker, then sits outside on a bench. She removes the cervical collar she had worn in the courtroom, and converses with her husband and daughter, turning her head from side to side as she directs remarks to each. She tilts her head back on several occasions as she sips from a can of soft drink.
The video lasts approximately one-half hour. At no point on it does plaintiff manifest any sign of pain or discomfort, either in her neck or her back, nor does her range of motion appear limited in any respect.
Plaintiff had indicated that she has limitations in turning her head, that she is in constant pain, and that her weakness is so great that the only things she can do for herself are to feed herself and go to the bathroom. Her behavior on the video not only contradicts her trial testimony regarding her limitations, but also contradicts statements she made to Dr. Culicchia, who had examined her prior to trial.
As the trial court pointed out when defense counsel objected at trial, the pretrial order in this case did not require prior disclosure of documentary impeachment evidence or rebuttal witnesses. Further, such disclosure is not mandated either by the Code of Civil Procedure or the Code of Evidence.
Ordinarily, it would be unduly burdensome to require a party to disclose, during discovery, evidence which may or may not be necessary to discredit a witness' testimony. See Johnson v. State Through Div. of Admin., 510 So.2d 87, 90 (La.App. 1st Cir.1987). However, our supreme court recently held *449 that surveillance film is discoverable whether or not it will be used at trial. Moak v. Illinois Cent. R. Co., 631 So.2d 401, 405 (La.1994).
Thus, if plaintiff had submitted a discovery interrogatory regarding the existence of videotapes of her, or a specific request for production of such, then even if no videotape existed prior to trial defendants would have been required to supplement their response to inform plaintiff when the videotape was made. La.Code Civ.P. art. 1428. Failing any such request by plaintiff, any pretrial surveillance videos would have been admissible as impeachment evidence without notice to plaintiff.
In other words, even if the defense had made a surveillance video six months or a year prior to trial, plaintiff would not have discovered it in advance because plaintiff never sought such in pretrial discovery. Any video made would have been a surprise to plaintiff. Under the circumstances, therefore, we cannot find error in the admission of the surveillance video made after trial had begun. Accordingly, we agree with the trial court that, under the circumstances here, the video made during the course of trial was admissible. See Guillot v. Miller, 580 So.2d 1104, 1106-1107 (La.App. 4th Cir.1991).
Nor did the trial court err in permitting the private investigator to testify regarding behavior that he himself observed but which was not recorded on the videotape. In that respect he served as a rebuttal witness and his identity was not required to be disclosed prior to trial. Further, he was testifying as a fact witness, not as an expert, and his testimony was admissible on that basis. Cf. Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868, 874 (La.App. 1st Cir. 1975). See also, Bush v. Winn Dixie of Louisiana, Inc., 573 So.2d 508, 513 (La.App. 4th Cir.1990).
Finally, regarding plaintiff's complaint that Dr. Culicchia was allowed to sit in the jury box while the jury viewed the videotape, the trial judge stated categorically that she had not permitted that. Our own review of the transcript indicates the doctor was not in the jury box at that point. (See R.Vol. 6, p. 1329, 11. 7-9.) Accordingly, there is no merit to this assignment of error.

MANIFEST ERROR
In this assignment of error plaintiff argues, in essence, that the jury was clearly wrong in finding that defendants were not at fault or a cause of the accident.
La.R.S. 32:24 provides, in pertinent part:
A. The driver of an authorized emergency vehicle, when responding to an emergency call ... or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
* * * * * *
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach....
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
The corresponding statute regarding the duty of other motorists to emergency vehicles is La.R.S. 32:125, which states:
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals ... the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible *450 to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
B. This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highways.
These statutes were incorporated into the instructions read by the trial judge to the jury prior to their deliberations.
The appropriate standard of appellate review requires an appellate court to find that a lower court committed manifest error or was clearly wrong in its findings of fact. Blair v. Tynes, 621 So.2d 591, 601 (La.1993). Where the jury's findings are reasonable in light of the record viewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court's ruling is manifestly erroneous or clearly wrong. Id.
Mindful of these principles, and applying the above statutes to the actions of the parties, we find no manifest error in the jury's conclusion that defendant Smith and the fire department were not liable.
Plaintiff attempted to establish that Smith did not in fact have on the fire truck's siren and/or flashing light or, alternatively, that Smith was negligent in waiting only five to ten seconds before going around Detillier to turn and in moving into the right lane of the Expressway as the truck completed its turn. The issue of the lights and sirens was a matter of credibility. Smith stated his lights and sirens were on and, further, that he pushed the horn several times, noting that when the siren is operating use of the horn makes a loud, startling sound. Detillier, on the other hand, testified she saw no lights and heard no siren. Clearly, the jury believed Smith rather than Detillier on this point and their finding was reasonable on the record before us.
Further, there is nothing in the record to indicate that Smith's behavior constituted "reckless disregard for the safety of others," which would violate the duty imposed by La.R.S. 32:24 on drivers of emergency vehicles. Nor does the record indicate that Smith acted without due regard for the safety of others. Smith's action in turning the firetruck into the right rather than the middle or left lane of the Expressway was reasonable, particularly since he was entitled to assume that Detillier would not move her vehicle until the fire truck had passed. See Smith v. Commercial Union Ins. Co., 609 So.2d 1024 (La.App. 2 Cir.1992).
On the other hand, it is clear that Detillier's actions violated the duty imposed on drivers by La.R.S. 32:125 to make way for emergency vehicles. Rather than stopping and staying in position until the fire truck had passed, she hesitated and then moved forward. Despite her apparent belief that she could turn into the right lane of the Expressway and still avoid the fire truck, she was negligent in failing to wait until the truck had passed her completely.
Given our affirmance of the no-liability finding, the issues of comparative fault and damages are moot.

DECREE
For the foregoing reasons, the judgment of the district court is AFFIRMED. Costs of this appeal are assessed against the appellant.
AFFIRMED.
NOTES
[1] Smith stated that his supervisor, Ed Martinez, had instructed him to use the siren only when necessary in residential areas.