660 So.2d 86 (1995)
Lisa JONES, Plaintiff-Appellant
v.
Adrian C. THOMAS, Metro Transport of Louisiana, Inc. and Cigna Property and Casualty Insurance Co., Defendants-Appellees.
No. 27140-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
Writ Denied December 8, 1995.
*87 Bruscato, Tramonana & Underwood by Anthony J. Bruscato, Monroe, for appellant.
Hayes, Harkey, Smith & Cascio by Thomas M. Hayes, III, Monroe, for appellee.
Before SEXTON, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
This case arises from a collision between an ambulance responding to an emergency call and the plaintiff's automobile which turned into its path. The driver of the automobile, Lisa Jones, was found to be 90% at fault in the accident, while the ambulance driver, Adrian Thomas, was only assessed 10% comparative fault. Ms. Jones was awarded general damages of $2,500.00 and special damages of $2,047.89, or a total of $4,547.89, subject to the 90% reduction as a *88 result of her fault. She appeals. For the reasons assigned below, we affirm the judgment of the trial court.

FACTS
The accident occurred at about 6 p.m. on January 8, 1993, near the intersection of North 18th Street and DeSiard Street in Monroe, Louisiana. DeSiard Street is a four-lane undivided road running east/west; North 18th Street is a two-lane street running north/south which deadends into DeSiard Street, forming a T-intersection on the north side of DeSiard. Ms. Jones was driving east on DeSiard and intended to turn left onto North 18th Street. She stopped at the red light at the T-intersection of these two streets. She was in the inside eastbound lane of DeSiard; although she testified that two other cars were stopped ahead of her, other witnesses maintained that she was the first car in that lane. The evidence demonstrated that between two and four cars were stopped to her right in the outside eastbound lane. While she was waiting for the light to change, she observed in her rear-view mirror that an ambulance was approaching directly behind her in her lane of traffic. The emergency signals and siren on the ambulance were operating, and it was blowing its horn.
The ambulance driven by Mr. Thomas was responding to an emergency, "priority 1" call involving a choking infant. Accompanying Mr. Thomas in the ambulance were a paramedic, Michael Phillip Johnson, and a trainee, Sheila Johnson Prestley. Mr. Johnson was seated in the front passenger seat, scanning a map for a quick route to their destination, while Ms. Prestley was seated in the captain's chair in the back, between the driver's seat and the front passenger's seat. The ambulance was proceeding east on DeSiard Street. At about 100 feet from the intersection of DeSiard and North 18th Street, the ambulance slowed to cross the double yellow line on DeSiard Street, moved into the inner lane of the westbound traffic, and then accelerated toward the intersection.
All other traffic in the area either remained stationary or pulled as far to the right side of the road as possible. Ms. Jones initially remained stationary. However, she then attempted to make her left turn onto North 18th Street. This maneuver placed her directly into the path of the ambulance, which struck the driver's side of her car. The ambulance pushed the car into an empty lot in the northeast corner of the intersection.
Ms. Jones' car was totalled in the collision. She testified that she also suffered multiple injuries to the left side of her body, including a shoulder injury, cuts to her face and left hand, muscle strain of the neck and back, and injury to her left elbow and ankle.
Ms. Jones filed suit against Mr. Thomas; his employer, Metro Transport of Louisiana, Inc.; and Metro's insurer, Cigna Property and Casualty Insurance Company. It was later determined that the proper name of the specific Cigna company insuring Metro was Insurance Company of North America.
Following a bench trial, the trial court assessed comparative fault as follows: 90% to Ms. Jones and 10% to Mr. Thomas. The court found that Ms. Jones was negligent in not yielding to the ambulance by pulling her car to the right or remaining in place; the court noted her testimony that it would have been inconvenient for her to go forward through the intersection instead of turning left. However, the trial court also found the ambulance driver at fault for not slowing down sufficiently when he approached the light. Although Ms. Jones was awarded general damages of $2,500.00 and special damages of $2,047.89, or a total of $4,547.89, this amount was reduced by the 90% fault assessment. Thus, her total award of damages amounted to $454.79. Also, 90% of the court costs were assessed against her.
Ms. Jones appeals, contending that the trial court erred in two regards: (1) it should have assessed more or all of the fault against the ambulance driver; and (2) it abused its discretion by awarding her only $2,500.00 in general damages for her multiple injuries.
The defendants did not appeal or answer the appeal.

*89 LIABILITY
The exception accorded to emergency vehicles from observing the general traffic regulations is found in LSA-R.S. 32:24, which provides, in pertinent part:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, ... may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
* * * * * *
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach....
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
LSA-R.S. 32:125 governs the procedure to be followed by other motorists on the approach of an authorized emergency vehicle. It states:
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, ... the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
B. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.
In Riggs v. State, 488 So.2d 443 (La.App. 3d Cir.1986), a collision occurred between a left-turning motorist and a state police car which was proceeding in the same direction in response to an emergency call. Although the motorist saw the flashing emergency lights in her rearview mirror, she erroneously thought she had sufficient time to make her left turn into her driveway before the police car overtook her. The trial court found the motorist to be solely responsible for the accident. The appellate court affirmed, finding (1) the motorist was unjustified in her belief that she could complete the turn, and (2) her primary concern was to avoid inconvenience to herself. Apparently, had she pulled to the right, as required by LSA-R.S. 32:125, she would have ended up driving past her driveway. The court held that vehicles are required to yield the right of way immediately, without thought to their own destinations. The court further found that the police car was not speeding excessively and was in compliance with LSA-R.S. 32:24.
Another case involving a motorist turning left in front of an emergency vehicle proceeding in the same direction is Angers v. Etie, 625 So.2d 347 (La.App. 3d Cir.1993). There, a volunteer fire fighter was responding to a call in his personal truck, which was equipped with emergency lights. As he approached the car ahead of him on a two-lane road, the car slowed down. The fire fighter assumed that the car was slowing to allow his emergency vehicle safe passage, and he eased into the left oncoming traffic lane to pass. However, as the front of the truck became even with the back bumper of the car, the car began to execute a left turn. It did not signal the turn until immediately before it began to turn. The vehicles collided. The driver of the car admitted that he knew the vehicle behind him was an emergency vehicle of some kind, but he failed to pull over to the right shoulder of the road. The trial court found the motorist 100% at *90 fault in the collision. The appellate court found no manifest error in this determination and affirmed.
In Detillier v. Smith, 94-34 (La.App. 5th Cir. 5/31/94), 638 So.2d 445, writ denied, 94-1762 (La. 10/7/94), 644 So.2d 645, a motorist was waiting to make a left turn at a traffic light. When the green turn arrow came on, she looked in her rearview mirror and saw a fire truck behind her. Although she claimed that she neither saw flashing lights nor heard a siren, she thought the fire truck was going to turn left and she wanted to get out of its way as soon as possible. After a brief hesitation, she turned left, and the vehicles collided. The driver of the fire truck testified that he had the siren on as he approached the intersection. He testified that the car ahead of him could not go left or right because of traffic. However, when the driver of the car got the left arrow, she did not move. He waited several seconds, sounded his horn several times, then began to go around her; at this point, she turned. The jury assessed all fault to the motorist. The appellate court affirmed, finding that the fire truck driver was entitled to assume that the car would not move until the fire truck passed and that the driver of the car was negligent in failing to stop and remain stationary until the fire truck had passed her completely.
In the instant case, the plaintiff cites two cases in support of her argument that she was not negligent, Keating v. Holston's Ambulance Service, Inc., 546 So.2d 919 (La. App. 3d Cir.1989), and Nelson v. State, Department of Public Safety, 581 So.2d 344 (La.App. 3d Cir.1991), writ denied, 586 So.2d 561 (La.1991). However, these cases are distinguishable.
In the Keating case, the sole cause of the collision between an ambulance and a left-turning motorist was the negligence of the ambulance driver. However, unlike the present case, the evidence showed that the ambulance in Keating was not responding to an emergency call and the siren was not sounded prior to the collision. Furthermore, after the car initially slowed down and pulled to the right side of the road, the ambulance slowed down and made no attempt to pass the motorist even though it had every opportunity to do so. Therefore, the motorist was justified in believing that he could return to the road and safely complete his left turn.
The Nelson case concerned a collision between a state trooper involved in a high speed criminal pursuit and a left-turning motorist who never heard the siren or saw the flashing lights of the police car prior to turning into its path. The plaintiff in the instant case, Ms. Jones, admits that she was well aware of the approach of the Metro ambulance.
Ms. Jones also argues that the evidence at trial was insufficient to prove that the ambulance was responding to an emergency call at the time of the accident. The underlying basis of this contention is Metro's failure to produce a "trip ticket" on the call from the ambulance involved in the collision. However, the testimony of the witnesses established that a "trip ticket" is only filled out if the ambulance actually arrives at the emergency scene. Since the collision prevented the ambulance driven by Mr. Thomas from completing its mission, no "trip ticket" was ever filled out by the personnel in that ambulance. However, a "trip ticket" on the call was filled out by the substitute ambulance which was dispatched by Metro after it was notified of the accident. The plaintiff makes much of minor time discrepancies in this "trip ticket" and the police report. However, we find that these variances are insignificant. The testimony of the witnesses that the ambulance was responding to a life-threatening call involving a small child (which was obviously accepted by the trial court) was sufficient to prove that fact.
Since the ambulance was responding to an emergency call while using its sirens and flashing lights, Ms. Jones was required by LSA-R.S. 32:125 to yield the right of way, pull as far to the right as possible, stop, and remain stopped until the ambulance passed. She admitted in her testimony that she saw and heard the ambulance approaching behind her. She seeks to excuse her failure to comply with her obligations under LSA-R.S. 32:125 by claiming excessive fright due to the ambulance's loud siren. Additionally, it appears that, like the motorist in the Riggs case, she was influenced by considerations of *91 her own convenience. She admitted (on both direct and cross examination) that she did not try to pull to the right side of the road because she was preparing to make a left turn at the intersection. To miss her turn at that intersection would have caused her to go out of her way to get home, and she did not wish to do that.
On the other hand, the ambulance was responding to an emergency call involving a small child who was choking. The driver was properly utilizing his lights and sirens to proceed through traffic. As he approached the intersection of DeSiard and North 18th Street, he observed that all of the cars, especially the traffic on North 18th Street which had the green light, were stopped to allow him to pass. In order to get around the stopped traffic, he crossed the double yellow line and proceeded east in the westbound lane of DeSiard. Mr. Thomas reduced his speed as he crossed the line and only began to accelerate once he was satisfied that the intersection was secure and safe to traverse. It was at this point that Ms. Jones turned into his path. (None of the ambulance occupantsor the driver of a car stopped in the outside eastbound lane of DeSiardsaw a left-turn signal on Ms. Jones' car.) We find that, like the fire truck driver in the Detillier case, Mr. Thomas was entitled to assume that Ms. Jones' car would not move until the ambulance had completely passed her.
Based upon our review of the evidence, we find no manifest error in the trial court's assessment of 90% fault to Ms. Jones. The trial court judgment assessing comparative fault is affirmed.

DAMAGES
Ms. Jones also argues that the trial court erred in making an abusively low award of general damages. Maintaining that $2,500.00 is inadequate to compensate her for her injuries, she seeks an increase to $7,500.00.
The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn, supra.
Immediately after the accident, Ms. Jones was taken by ambulance to a local hospital where she was treated in the emergency room and released. A week later she saw a general practitioner. The doctor diagnosed a muscular strain of the neck, back, and shoulder; a contusion of her left hip; and superficial lacerations of the left hand and left side of the face. She also had a bruise on the left side of her head, apparently from hitting something inside the car. Although the doctor felt she might have sustained a mild cerebral concussion, her neurological exam was normal. Ms. Jones missed work for two and one-half weeks, and her condition essentially resolved within two to three months of the accident.
Ms. Jones' injuries were not severe, and the trial court's superior judgment in light of its ability to observe the witness and determine her actual condition should be respected. Although the trial court award might be slightly on the low side, we find no abuse of discretion. Consequently, we affirm the general damages award of $2,500.00.

CONCLUSION
The judgment of the trial court is affirmed. Costs are assessed against the appellant.
AFFIRMED.