HARDY, Judge.
This is an action ex delicto in which plaintiff, individually and on behalf of her minor children, seeks recovery of damages for the death of her husband, Preston P. Peninger, as the result of a collision between an ambulance and a dump truck. Named as defendants are H. M. Gilbert, driver of the truck, Caddo Parish Police Jury, owner, and its public liability insurer, New Amsterdam Casualty Company. To this suit Hartford Accident & Indemnity Company intervened, praying recovery for amounts paid or for which it might be liable as workmen’s compensation insurer of Hanner Funeral Home, employer of decedent. After trial there was judgment in favor of defendants rejecting the demands of plaintiff and intervenor, from which they have appealed. It is noted that one of the minor children of decedent became of age subsequent to the filing of this suit, was substituted as a party plaintiff in his own name, and is one of the appellants before this court.
This suit is one of four separate actions arising from the same accident which were consolidated for trial.
The accident occurred shortly after four o’clock P.M., of October 4, 1956 on Highway 1 a short distance south of the Town of Vivian in Caddo Parish. The vehicles involved were an ambulance owned by Hanner Funeral Home of Vivian driven by its employee, Preston P. Peninger, and a dump truck owned by Caddo Parish Police Jury and driven by its employee, H. M. Gilbert. Immediately prior to the collision both vehicles were moving south on Highway 1, the ambulance, answering an emergency call, moving at a speed estimated as between 65 and 80 miles per hour, overtaking the dump truck moving at a speed-of approximately 10 miles per hour and preparing to execute a left-hand turn into what is known as the Camp Road which makes a “T” intersection into Highway 1 from the east. The ambulance, with siren sounding and lights flashing, moved into its left láhe of the highway for the purpose of passing the slow moving dump truck. This change from the right into the left lane occurred at a time when the interval separating the two vehicles was approximately 500 feet, more or less. When this interval had been closed to a distance of some 200 to 300 feet the ambulance turned back into the right lane, shortly thereafter the brakes were applied and after skidding approximately 150 feet the left front of the ambulance struck the right rear of the dump truck. The ambulance was thrown off of the highway and came to rest against a tree on the west side thereof, the force of the impact being of such degree that the driver, Peninger, was killed immediately. As the result of the impact the dump truck was knocked some 50 to 60 feet to the south and spun about in such manner that it came to rest, near the center of the highway, headed north. The truck driver, Gilbert, sustained physical injuries for which he seeks recovery in one of the companion suits to this action.
Certain additional material facts were preponderantly established by the witnesses who testified on trial and by the exhibits introduced. The highway to the north of the point of impact was clear, straight and the view unobstructed for a distance of well more than 1,500 feet. Peninger turned on the siren when he left the funeral home and it continued to sound loudly until it was turned off by one of the witnesses who reached the scene immediately after the occurrence of the accident. The sound of the siren was heard by a number of people in cars on the highway and in houses located some distance therefrom. Strangely *130 enough, the truck driver, Gilbert, testified repeatedly that he never did hear the siren nor observe the approach of the ambulance in his outside rear view mirror at any time prior to the collision, despite the fact that the windows of the cab of his truck were open and no reason was advanced by the witness for his failure to hear or observe the approach of the emergency vehicle. It was further the testimony of thiSj witness that he intended to turn left into the Camp Road, and at a point some ISO to- 200 feet north of the intersection he gave evidence of this intention by turning on his left blinker signal lights. This signal was observed and testified to by other witnesses, particularly a Mr. Westbrook who was driving his car behind the ambulance after having pulled off the highway to permit the passage of the ambulance at a point some 1,200 feet or more north of the Camp Road intersection. Of further importance is the established fact that the highway at and for some distance on both sides of the point of impact was marked with a double yellow stripe indicating a no passing zone.
The most seriously disputed question of fact is whether Gilbert, in addition to signaling his intention, had actually begun a left turn operation either to the extent of approaching or actually crossing the center line of the highway. Although Gilbert repeatedly denied that he actually began the turning operation, counsel for appellants earnestly argues that his testimony to this effect was successfully impeached.
Before this court appellants specify error as to the finding of contributory negligence on the part of Peninger, the exclusion from evidence on trial of the case of a report and sketch as to the actual circumstances of the accident made immediately following its occurrence by an investigating Deputy Sheriff of Caddo Parish, since deceased; the exclusion of the report and sketch made by a State Trooper in connection with his investigation of the accident, and, finally, as to the refusal of the trial judge to hold that the doctrine of last clear chance was applicable.
The testimony of the witnesses on behalf of both the parties plaintiff and parties defendant appears to be unnecessarily involved, and, in large measure, unsatisfactory. There are obvious discrepancies in the testimony of many of the witnesses. However, we think this objection, which relates to the degree of confusion and uncertainty in the testimony, is the result of the long delay of almost seven and one-half years between the occurrence of the accident and the trial of the case. After careful review of the record we are of the opinion that the testimony of the witnesses, Westbrook and Cassidy, is most reliable and convincing as to the immediate factual circumstances surrounding the collision. Mr. Westbrook, accompanied by Mr. Cassidy, was driving his car south on Highway 1 when he heard the siren of the approaching ambulance, whereupon he turned off the highway and brought his car to a stop on the west side thereof at a point approximately 1,200 feet north of the intersection of the Camp Road. After the ambulance passed, Westbrook drove back onto the highway and began to follow the vehicle, though not at an excessive rate of speed. Both of these witnesses observed the ambulance turn into the left lane of the highway and were then able to perceive the truck moving slowly south on the highway with its left signal light blinking. According to these witnesses the sequence of events above described then followed. The ambulance turned back into the right lane, the brake lights flashed and the impact occurred with terrific force at a point some 30 odd feet north of the intersection of the Camp Road. 'The measured distance of ISO feet of the skidmarks made by the brakes of the ambulance was established by the testimony of other witnesses.
The one unknown factor which cannot be definitely established from the record is posed by the question:
“Why did Peninger driving at a high rate of speed, having committed himself to a passing maneuver, suddenly abandon this *131 action, turn back into the right lane of travel and apply his brakes?”
We think there are a number of equally reasonable alternative explanations as to the cause of this action. Peninger may have been warned by the blinking light signal of the truck as to the intention of the driver to make a left turn; it may be that some turning movement, however slight, was made by the driver of the truck; it could have been that Peninger suddenly realized the danger of attempting to complete a passing movement in a no passing zone and at an intersection. However reasonable or logical all or any of these explanations might be, we do not find that the certain resolution of the answer to the question is essential.
The Highway Act in effect at the time of the occurrence of the accident which is the basis of this suit contained the following specific provisions appropriate and applicable to the facts of this case:
“L.R.S. 32:230. Speed limits; exempt vehicles
“The speed limitations of this Chapter do not apply to * * * ambulances operated in emergencies and with due regard for safety. But no owner or operator of such vehicles is protected from the consequences of a reckless disregard of the safety of others.”
******
“L.R.S. 32:233. Overtaking and passing vehicles
“E. The driver of a vehicle shall not, under any circumstances, overtake or pass another vehicle proceeding in the same direction at * * * any intersection of the highway, * * *
******
“L.R.S. 32:237. Right of way
“F. The driver of a vehicle upon a highway shall yield the right of way to police and fire department vehicles and hospital ambulances when operated upon official business or emergency errand and the drivers thereof sound audible signal by appropriate bell, siren, or whistle. This shall not operate to relieve the driver of a police or fire department vehicle or hospital ambulance from the provisions of R.S. 32:223 and 32:230.”
******
“L.R.S. 32:238. Procedure on approach of police or fire department vehicles, or hospital ambulance
“A. Upon approach of any police or fire department vehicle, or hospital ambulance, giving audible signal by an appropriate device, the driver of every other vehicle shall immediately drive to a position as near as possible and parallel to the right hand side of the highway, clear of any intersection, and shall stop and remain there, unless otherwise directed by police or traffic officer, until the police or fire department vehicle or hospital ambulance shall have passed.”
We have found no difficulty in reaching the conclusion that both Peninger and Gilbert were guilty of acts of gross negligence which were concurrent and proximate causes of the occurrence of the tragic accident. Although the speed at which the ambulance was being operated cannot be definitely ascertained, we think the limitations between 65 and 80 miles an hour, as variously estimated by the witnesses, was clearly excessive under the circumstances. There can be no question as to the conclusion, upon the basis of the testimony of Westbrook and Cassidy, that in the course of changing lanes and applying brakes Peninger lost control of his vehicle due to the high rate of speed at which he was driving. Approximately 500 feet north of the Camp Road the Lower State Line Road made a “T” intersection with Highway 1 from the west. The area was marked by a school zone crossing warning on the surface of the highway and the double yellow line no passing zones at and near the *132 intersections indicated areas of danger. It was further established that Highway 1 begins a rise in grade slightly south of the Camp Road intersection which effectively blocks the view of approaching northbound traffic. The existence of these physical conditions abundantly supports the conclusion that Peninger, the driver of the ambulance, was guilty of a reckless disregard of the safety of others. He was not only in clear violation of the prohibitions of the Highway Regulatory Act but, under these circumstances, his negligence was a direct cause of the accident.
The negligence of Gilbert is equally clear. He, too, was in clear violation of prohibitions of the Highway Regulatory Act. The record discloses no ground for excusing, much less for justifying, Gilbert’s failure to hear or see the approach of the ambulance. In Calvert Fire Insurance Company v. Hall Funeral Home (La.App. 2nd Cir., 1953), 68 So.2d 626, the court held that a driver should have heard that which he could have heard, and declared:
“No reason is given why he should not have heard the signal as did many other witnesses.”
The above quotation and the entire rational of the court’s opinion in the Calvert case is more appropriate. Indeed, we think Gilbert would have been guilty of negligence even if the overtaking vehicle was not equipped with either a siren or flashing lights. The responsibility upon a motor vehicle driver who intends to make a left turn has been so clearly enunciated in a long line, of cases that it stands in no need of further iteration.
Nor do we find any ground for the application of the doctrine of last clear chance for the benefit of either party. The negligence of both drivers continued to the moment of the occurrence of the accident. While we are impressed with the urgency of the argument made by counsel for plaintiffs, we do not think his reliance upon the pronouncements of the court in Dean v. Pitts (La.App. 2nd Cir., 1961), 133 So.2d 917, is controlling in view of the clearcut pronouncement of the Supreme Court in Hollabaugh-Seale Funeral Home, Inc. v. Standard Accident Insurance Company et al., 215 La. 545, 41 So.2d 212, in which the facts were remarkably analogous to those which are under consideration in this case. The court in disposing of the arguments based upon the principles of last clear chance and discovered peril made the following statement:
“Strictly speaking, last clear chance is inapplicable as the negligence of the ambulance driver continued to the moment of the accident. The kindred doctrine of discovered peril * * * is not appropriate to this case because there is nothing in the testimony of Mrs. De Frances to show that, prior to the time she negotiated the left turn, she was aware of the speed of the ambulance, its close proximity and its attempt to overtake and pass her truck.”
Neither are similar contentions invoking the doctrine of last clear chance as against Peninger entitled to consideration under the facts of this case. There is no indication in the record nor has counsel presented any argument as to the action which could have been taken by Peninger which would have been effective in avoiding the accident. The doctrine relied upon means exactly what the words imply and there must be a clear chance of avoiding the accident. Under the established facts it is obvious that Peninger made one effort to avoid the impending collision, which was unsuccessful. The only other course open to him would have been to continue his passing movement, which, unquestionably, would have had even more disastrous results in view of Gilbert’s complete unawareness of the danger of the situation and his intention of making a left turn which was imminent if not actually in course of operation.
We pretermit detailed consideration of the specifications of error with respect to *133 the ruling of the trial court excluding from evidence the report of the deceased Deputy Sheriff and the report of the State Police for the reason that the admission of these documents would have no effect upon our conclusions. They would serve only to increase the degree of Gilbert’s negligence without minimizing the negligence of Pen-inger which we hold to have been a concurrent cause of the accident.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.