581 So.2d 344 (1991)
Elizabeth L. NELSON, et vir, Plaintiffs-Appellees,
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY, et al., Defendants-Appellants.
No. 89-1348.
Court of Appeal of Louisiana, Third Circuit.
May 22, 1991.
Rehearing Denied June 24, 1991.
Watson, Murchison, Crews, Arthur & Corkern, Steven Crews, Natchitoches, for plaintiffs-appellees.
*345 Cook, Yancey, King & Galloway, Kelly Strickland, Shreveport, for defendants-appellants.
Before STOKER, DOUCET and KING, JJ.
STOKER, Judge.
This is a personal injury suit arising from an automobile accident on February 1, 1988 between Elizabeth L. Nelson and Trooper William R. Withers, an employee of the Louisiana State Department of Public Safety and Corrections (hereinafter, State). Trooper Withers was driving within the course and scope of his employment, in pursuit of a vehicle driven by Connie Eason, at the time of the accident. Nelson and Trooper Withers were both injured.
Nelson and her husband, Donald R. Nelson, filed suit against the State of Louisiana, Department of Public Safety and Corrections (hereinafter, State), and Connie Eason, claiming damages for personal injury, property damage and loss of consortium. The State answered alleging Nelson's fault and comparative negligence and filed a reconventional demand for worker's compensation benefits paid to Trooper Withers and for damages to his vehicle, in the event that Nelson was found to be at fault.
The trial judge found Trooper Withers to be solely at fault in causing the accident and held the State liable to plaintiffs for $15,609.27, plus interest and costs. The State's reconventional demand for reimbursement of worker's compensation benefits and property damages was denied.
The State appeals this judgment as to the assessment of fault. The amount of damages awarded to plaintiffs is not at issue.

FACTS
The accident occurred on February 1, 1988, at 4:05 p.m., in Many, Louisiana, at the intersection of Fisher Road and Georgia Avenue. See Appendix I. Trooper Withers was engaged in high speed pursuit of Connie Eason, who had run a stop sign and was driving between 80 and 100 miles per hour. Eason proceeded through a red light at the intersection, driving north in the wrong lane and forcing many cars off of the road.
Plaintiff Nelson was waiting at a red light at the intersection, in the northbound lane of Fisher Road, preparing to turn left onto Georgia Avenue. Nelson watched, startled, as Eason passed her vehicle on the left.
Trooper Withers pursued Eason's vehicle northward up the southbound lane. The other vehicles yielded to Trooper Withers' police lights and siren. However, Nelson, unobservant of the police vehicle and not hearing the siren, attempted to make her left turn after Eason's car had passed her and the light had turned green. Nelson drove her car directly into Trooper Withers' path.
Trooper Withers had slowed his speed as he approached the intersection to about 50 to 60 miles per hour. The posted speed limit at the intersection was 30 miles per hour. When he observed Nelson turning left directly in his path he attempted to brake, skidded, then drove to the right so that, instead of hitting Nelson's left front door, he hit her left rear fender. Both vehicles came to rest outside of the intersection. Besides major damages to both vehicles, Nelson sustained a whiplash injury and Trooper Withers sustained a herniated disc.
Two disinterested eyewitnesses watched the accident. Dr. Anthony Murray, a chiropractor, stated that he was waiting at the red light on the opposite side of the intersection from Nelson. He did not see Eason's vehicle, but he looked up when he heard Trooper Withers' siren and he saw the police car's flashing lights. He stated that Nelson seemed to be unaware of Trooper Withers' vehicle because she started to turn left in front of him after Eason had passed. Dr. Murray stated that Trooper Withers attempted to stop, skidded and then drove to the right.
Franklin L. Moore testified that he viewed the accident from a corner of the intersection. Moore saw Eason speed through the intersection; then he heard the *346 police siren, looked and saw Trooper Withers approaching the intersection with flashing lights. Moore testified that he thought Withers was driving about 60 miles per hour (Withers had testified that he had been driving about 50 miles per hour). Moore stated that he thought Eason had driven through the intersection at at least 80 miles per hour. He also stated that Eason was driving much faster than Trooper Withers at the intersection area. Moore watched Trooper Withers approach the intersection, brake, skid, veer to the right and collide with plaintiff. Moore did not notice Nelson until she was in the middle of the southbound lane, turning left directly in Trooper Withers' path. Moore further stated that all of the vehicles in the northbound lane of Fisher Road, other than Nelson's, had stopped for Eason and Trooper Withers.
Dean Lambert, the Chief of Police of Many and the investigating officer of the accident, testified that the accident occurred mostly or entirely in the southbound lane of Fisher Road. He also stated that Trooper Withers was on duty at the time of the accident in pursuit of Eason's vehicle. Eason was arrested a day or two later.
A stipulation was made that the State had paid $18,648.02 in worker's compensation benefits and medical expenses to Trooper Withers at the time of trial. A further stipulation was agreed to that the State's vehicle had sustained $2744 of damages.

OPINION
The State contends on appeal that the trial judge erred in assessing 100% of the fault for the accident to Trooper Withers, alleging that plaintiff was also at fault. The State also appeals the dismissal of its reconventional demand against Nelson for reimbursement for worker's compensation paid to Withers.
The trial judge found that Trooper Withers was solely at fault in causing the accident because he violated his duty as a motorist to operate his vehicle in such a manner that he could stop within the range of his vision. See LSA-R.S. 32:64. The trial judge also found that plaintiff was making a lawful left turn with no knowledge that a high speed chase was taking place. He found that Nelson neither heard the siren nor saw the flashing lights.
We find the trial judge committed an error of law and, accordingly, reverse in part.

TROOPER WITHERS
The trial judge erred as a matter of law in applying the standard of LSA-R.S. 32:64, which applies to ordinary motorists, to Trooper Withers. The applicable statute, LSA-R.S. 32:24, states:
"§ 24. Emergency vehicles; exceptions
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
"B. The driver of an authorized emergency vehicle may:
"(1) Park or stand, irrespective of the provisions of this Chapter;
"(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
"(3) Exceed the maximum speed limits so long as he does not endanger life or property;
"(4) Disregard regulations governing the direction of movement or turning in specified directions.
"C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
"D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor *347 shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."
Under this statute, Officer Withers, as the driver of an emergency vehicle, is relieved of the more stringent duties applicable to ordinary motorists. However, he is not relieved of his duty to drive with due regard to the safety of others. See also, Kaplan v. Lloyds Ins. Co., 479 So.2d 961 (La.App. 3d Cir.1985); Cassity v. Williams, 373 So.2d 586 (La.App. 3d Cir.1979); Carpenter v. Hartford Accid. & Indemn. Co., 333 So.2d 296 (La.App. 1st Cir.1976); Peninger v. New Amsterdam Cas. Co., 187 So.2d 128 (La.App. 2d Cir.), writ refused, 187 So.2d 439, 441 (La.1966).
Trooper Withers was traveling at an excessive rate of speed, in the wrong lane, through a red light at an intersection and at a time of day when traffic would be heavier than usual. Moreover, he was attempting to pass traffic in a nonpassing zone. Under LSA-R.S. 32:24, Trooper Withers was authorized to make these traffic law transgressions since he was using his siren and flashing lights. However, taken together, he created a situation which was highly dangerous to the other motorists. Trooper Withers clearly breached his duty to drive with due regard for the safety of others. Therefore, he is clearly at fault in causing the accident.

MRS. NELSON
The degree of care required of the drivers of other vehicles, upon the approach of an emergency vehicle, is provided for by LSA-R.S. 32:125, which states:
"§ 125. Procedure on approach of an authorized emergency vehicle
"A. Upon the immediate approach of an authorized vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
"B. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."
A motorist's duty to yield the right of way to emergency vehicles arises only when the motorist observes or hears, or under the circumstances should have observed or heard, the audible or visible warnings of the emergency vehicle. Kaplan v. Lloyds Ins. Co., supra; Cassity v. Williams, supra; Carpenter v. Hartford Accid. & Indem. Co., supra; Peninger v. New Amsterdam Cas. Co., supra.
Trooper Withers and both eyewitnesses to the accident testified that the other vehicles behind plaintiff yielded to the police car. Both eyewitnesses heard the siren and saw the flashing lights.
Plaintiff testified that she watched Eason's vehicle speed through the intersection and that it startled her. She also wondered what was going on; thus, she was apparently aware that something unusual was occurring. However, plaintiff offered no explanation as to why she failed to see, hear or look for the following police vehicle, other than stating that she had her windows rolled up, probably had the heater on and may have had the radio on low. However, since it was February 1, it is more than likely that at least some of the other drivers who did yield to Trooper Withers were driving with windows up and heaters on. Under the circumstances, plaintiff should have observed or heard Trooper Withers' police vehicle.
Therefore, we find that plaintiff was also at fault in causing the accident by failing to yield to an emergency vehicle as required under LSA-R.S. 32:125.

APPORTIONMENT
Comparative fault requires the allocation of the percentage of fault to the responsible parties. In making this allocation of fault, we must consider both the nature of the conduct of each party at fault *348 and the extent of the causal relationship between the conduct and the damages. In assessing the nature of the conduct of the parties, some of the factors which may influence the court are:
1. Whether the conduct resulted from inadvertence or involved an awareness of the danger,
2. How great a risk was created by the conduct,
3. The significance of what was sought by the conduct,
4. The capacities of the actor, whether superior or inferior, and
5. Any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligence conduct and the harm to the plaintiff are considerations determining the relative fault of the parties.
See Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985); Kaplan v. Lloyds Ins. Co., supra.
Trooper Withers' conduct stemmed from a conscious choice, while plaintiff's negligence was due to inadvertence and inattentiveness. However, it appears that plaintiff could have avoided the accident altogether had she been more attentive. On the other hand, Trooper Withers, in pursuit of a person who was recklessly endangering the public, could only choose between abandoning the chase and letting Eason go or depending on the other motorists to yield to his emergency signals. Trooper Withers did have a duty, though, to pursue Eason with due regard to safety of others.
Having given due consideration to these factors, we conclude that fault should be apportioned 25% to plaintiff and 75% to defendant. Accordingly, plaintiff's recovery is reduced by 25%, or to $11,706.95.

RECONVENTIONAL DEMAND
Finally, the State claims the trial judge erred in dismissing its reconventional demand for reimbursement of worker's compensation paid to Trooper Withers and the claim for damages to the State's vehicle. Since we have concluded that plaintiff was 25% at fault in causing the accident, we will assess to plaintiff liability for 25% of the worker's compensation paid to Trooper Withers by the State and 25% of the damages to the vehicle.
The amount of worker's compensation and medical benefits paid was stipulated to at trial as $18,648.02. Therefore, plaintiffs are liable to defendant for $4662. See Scott v. Barclay's American Leasing Serv., Inc., 506 So.2d 823 (La.App. 1st Cir.), writ denied, 508 So.2d 88 (La.1987). The property damage stipulated to was $2744. Therefore, plaintiffs are also liable for $686.
Since plaintiff has pleaded the affirmative defense of set-off, or confusion, under LSA-C.C. art. 1903, the judgment will be amended and rendered accordingly to award to plaintiff $11,706.95 minus $5348, for a net sum of $6348.95.

CONCLUSION
For the reasons given, the judgment of the trial court is amended so that judgment is rendered in favor of plaintiffs and against defendant, awarding to plaintiffs $6348.95 with legal interest from date of judicial demand. Costs of trial and this appeal are assessed 75% to defendant and 25% to plaintiffs.
AMENDED AND RENDERED.
*349