704 So.2d 42 (1997)
Gertrude Albarado DECOURT
v.
Mark N. CARACCI, et al.
No. 97-CA-393.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1997.
Writ Denied February 13, 1998.
*43 Stephen N. Elliott, Howard B. Kaplan, Metairie, for Appellants.
Burt K. Carnahan, Joseph M. Messina, Metairie, for Appellees.
Before GRISBAUM, DUFRESNE and WICKER, JJ.
WICKER, Judge.
This appeal arises from a petition for damages filed on behalf of the plaintiff, Gertrude Albarado Decourt (Decourt), against the defendants, Mark N. Caracci (Caracci), Stephen J. Phillipe (Phillipe), Jefferson Parish Hospital District No. 2, d/b/a East Jefferson General Hospital (East Jefferson), State Farm Mutual Automobile Insurance Company (State Farm) and Empire Fire & Marine Insurance Company (Empire) for injuries resulting from a collision between an automobile driven by Caracci and an ambulance driven by Phillipe. The accident occurred April 20, 1993. Decourt was a passenger in the ambulance at the time of the accident. Caracci was insured by State Farm, while East Jefferson was insured by Empire. A trial as to apportionment of fault proceeded with Empire being tried by a jury and the remaining defendants being tried by the trial judge. On August 22, 1996 two judgments were rendered. In one of these two, the trial judge made the jury verdict as to apportionment of fault, the judgment of the court. The jury determined Caracci was 90% at fault and Phillipe was 10% at fault. In the second judgment rendered the same date, the trial judge determined Caracci was 25% at fault and Phillipe was 75% at fault. She also noted there was an inconsistency in the apportionment of fault between the jury determination and that of the trial judge. She reconciled the inconsistency by granting a Judgment Notwithstanding the Verdict (JNOV) and upheld her apportionment of fault.
On August 29, 1996 Phillipe, East Jefferson, and Empire filed a motion for JNOV and/or new trial. On September 3, 1996 Caracci and State Farm filed a motion for amendment of the judgment or alternatively for a new trial to request the trial judge to amend its judgment to provide for Caracci's and State Farm's recovery from the other defendants for 75% of $80,000, a total of $60,000, pursuant to a subrogation agreement based on oral stipulations at trial. The judgment of dismissal was attached in support of the motion as was a document entitled, "Receipt, Release and Agreement to Indemnify." Phillipe, East Jefferson and Empire filed an opposition and noted that State Farm did not offer the release document into evidence. They also filed an exception of no cause of action asserting that Caracci and State Farm have no cause of action to recover from Empire for amounts which were paid to Decourt.
On November 8, 1996 the trial judge rendered a judgment on these motions. She granted the motion for amendment of judgment or alternatively for a new trial filed by Caracci and State Farm and denied the motions filed by Phillipe, East Jefferson, and Empire. The trial judge amended the judgment dated August 22, 1996 in which the court assessed fault to Caracci to be 25% and Phillipe to be 75%. The judgment was amended to reflect judgment in favor of State Farm and Caracci against Phillipe, East Jefferson and Empire in the sum of $60,000, together with legal interest from the date of State Farm's payment to Decourt, and all costs associated with State Farm's demand for reimbursement. Phillipe, East Jefferson and Empire now appeal. We affirm.
The issues before this court are whether the trial judge erred in granting the JNOV and in determining that State Farm had subrogation rights against Empire, East Jefferson, and Phillipe.

SUBROGATION
On February 27, 1996 trial began. At the beginning of trial, counsel for Caracci and State Farm referred to settlement negotiations in chambers whereby State Farm opted to settle Decourt's claim in return for which State Farm would be subrogated by Decourt *44 to her rights to proceed against the nonsettling defendants, East Jefferson, Phillipe, and Empire. Trial proceeded that date. The trial judge instructed the jury that plaintiff's demand had been satisfied and that suit was proceeding with regard to the claims of the remaining parties.
Counsel for East Jefferson's interests made no objection to the trial proceeding on the issue of liability alone. He never asked for a separate trial as to damages. On appeal he does not ask this court to remand the case for a separate trial on damages. It is evident from the record[1] that the plaintiff's attorney stipulated his client was "out of the case" since State Farm paid $80,000. Additionally, that stipulation was contained in a judgment rendered March 25, 1996 in which Decourt did not reserve any of her rights against the nonsettling defendants.[2]
Thus, $80,000 was the entire amount of damages owed to the plaintiff. Trial proceeded solely on the issue of apportionment of fault between two alleged tortfeasors, with State Farm being allowed its right to contribution should the nonsettling defendants be apportioned fault.
On appeal, counsel argues there was no subrogation of the claim, and as such State Farm's judgment of $60,000 should be reversed.[3] In Touchard v. Williams, 617 So.2d 885, 892 (La.1993) the Louisiana Supreme Court noted that, "As discussed, solidary liability among joint tortfeasors has been a part of the Louisiana civilian tradition for over 150 years. La.Civ.Code art. 2304 (1825)." The sole issue on appeal regarding this specification of error is whether a settling solidary obligor can proceed against a nonsettling solidary obligor for that obligor's virile share. The Louisiana civil code clearly permits such an action. Louisiana Civil Code article 1804 provides:
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obligor.

*45 A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.

If the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties [emphasis added].
All defendants recognized this cause of action when they filed cross-claims for contribution against each other. La. Civ.Code arts. 1800[4] and 1805.[5]Accord, Morris v. Kospelich, 253 La. 413, 218 So.2d 316, 317 (La.1969) wherein the court held that settling joint tortfeasors were entitled to recover the virile share of money expended as a result of a voluntary compromise between themselves and the injured party.
Appellants assert that in order for State Farm to be subrogated to Decourt's rights, the settlement must have been for the entire debt and not merely for State Farm's portion of the entire debt. Ducote v. Commercial Union Ins. Co., 616 So.2d 1366 (La.App. 3rd Cir.1993), writ denied, 620 So.2d 877 (La. 1993).
Under article 1804 State Farm must have rendered the "whole performance."
In Diggs v. Hood, 772 F.2d 190 (5th Cir. 1985) the court considered the following issue:
whether, under Louisiana law, one of two joint tortfeasors who compromises the claim against him and receives a release in which the injured plaintiff reserves his rights against the nonsettling tortfeasor has a cause of action against that joint tortfeasor on the basis of contribution, indemnity, subrogation, or unjust enrichment...
The court found the settling tortfeasor had no right of contribution against the nonsettling tortfeasor since the settling tortfeasor did not pay what the nonsettling tortfeasor owed. Diggs. If State Farm had paid only its portion of the damages owed, then it could not seek contribution. Diggs. However, State Farm paid the "whole performance" since the plaintiff has no further claim for damages because she did not reserve any of her rights against the nonsettling defendants.

JNOV
Appellants argue it was improper for the trial judge to grant a JNOV since the evidence was sufficient to support the jury's verdict. After the jury verdict was made the judgment of the court, the trial judge rendered a JNOV pursuant to La.Code Civ. P. art. 1811(B) which provides:
B. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
The trial judge stated she was doing so because the jury gave findings of fault as to parties for whom it was not entitled to do so and in order to reconcile inconsistent verdicts.[6] The trial judge was confronted with a troublesome problem. She noted that the Supreme Court should address the issue. After her judgment had been rendered, *46 the Supreme Court did so in Powell v. Regional Transit Authority, 96-0715 (La.6/18/97) 695 So.2d 1326. The Louisiana Supreme Court has recently held that a JNOV cannot be used in this fashion when it held:
A motion for a JNOV may be granted only if the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable jurors could not arrive at a contrary verdict. 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2524 (2d ed.1995).
Powell, supra at 1328.
In Powell a bifurcated trial was held in which the trial judge decided the liability of a governmental body while the jury decided the liability of the individual employee. Conflicting decisions resulted. The trial judge granted plaintiff's motion for JNOV. The appellate court reviewed the record and concluded that reasonable persons viewing the evidence could have reached different results as to the employee's negligence. It set aside the JNOV and reviewed the jury verdict alone. The Supreme Court found no error in the appellate court's setting aside the JNOV but stated 695 So.2d at 1329:
The problem is that once the court of appeal set aside the JNOV, there remained two decisions by triers-of-fact of equal dignity, and the court of appeal ignored the trial judge's decision while adopting the jury verdict. The decision by the court of appeal that the trial judge was wrong in granting a motion for JNOV, based on the "reasonable minds could not differ" standard, did not decide that the trial judge's original decision on the merits in the bifurcated trial was also wrong, based on the entirely different manifest error standard. The appellate court therefore erred in not addressing both of the conflicting decisions, that of the jury and that of the trial judge, under the manifest error standard.
The Supreme Court did not address the issue of how to reconcile inconsistent findings of fault after analyzing both judgments under the manifest error standard. There was no need to do so in Powell since trial should not have been bifurcated. The court analyzed La.R.S.13:5101 which provides that "[n]o suit against a political subdivision of the state shall be tried by jury." It concluded that the prohibition of jury trials applies to the employee of the governmental entity as well, when the liability is vicarious. We hold that prohibition applies as well to the insurer of a governmental entity when the liability is not independent, but vicarious.
In this instance, the public liability insurer, Empire, stands in the shoes of its insured, East Jefferson. Accord Noel v. State, 284 So.2d 587 (La.1973); Gallien v. Commercial Union Ins. Co., 353 So.2d 1127, 1131 (La. App. 3rd Cir.1977), writ denied, 354 So.2d 1379 (La.1978); La.R.S. 22:655. In this case the issue is the same for both the employee and Empire, both nongovernmental entities. If Phillipe is not at fault, then both East Jefferson and Empire would be free of fault. There is no independent basis for holding either East Jefferson or Empire liable other than through the vicarious liability of East Jefferson's employee, Phillipe.
The Powell court held that the jury verdict must be disregarded and that the decision of the trial judge should be reviewed under the manifest error standard. We have conducted a review of the record and find no manifest error in the trial judge's findings regarding the apportionment of fault. We note that although the trial judge granted a JNOV in the same judgment as her findings of fault, we nonetheless only vacate that portion which grants the JNOV but affirm that judgment for the reasons discussed infra since this judgment also reflects the judgment of the trial court.

MANIFEST ERROR
State Farm presented the testimony of the following witnesses: Caracci, Valerie Dial, Merlin Gresse, Raymond Dellumo, and Terry Campbell. These witnesses testified that Phillipe was crossing the intersection when his light was red and that Caracci had the green light. On the other hand, the East Jefferson interests presented the testimony of Maria Catania, Terry Calongue, Brent *47 Hedderel[7] and Phillipe that Phillipe had the green light. In addition, there was conflicting testimony as to whether Caracci was speeding. Caracci testified he was going the speed limit. That testimony was corroborated by Dellumo. Hedderel testified Caracci was going "fast." No other eye witness testified as to the estimated miles per hour Caracci was traveling. The only witness who testified Caracci was actually speeding by going 55 to 58 miles per hour was Joseph H. Andre, a traffic accident reconstruction expert. He testified that if Caracci had been traveling the speed limit of 35 miles per hour, he would have been able to stop in time to avoid the impact.
The trial judge evidently gave little weight to Andre's testimony. We find no manifest error in the trial judge's relying on eye witnesses to the accident rather than on an expert accident reconstructionist who was not present at the time of the accident.
La.R.S.32:24 provides:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
Under this statute the ambulance driver is relieved of the more stringent duties of ordinary motorists, but is not relieved of his duty to drive with due regard to the safety of others. Nelson v. State, Dept. of Public Safety, 581 So.2d 344, 347 (La.App. 3rd Cir.1991), writ denied, 586 So.2d 561 (La.1991).
Caracci testified he could not see the ambulance because a "wall of cars" in the median blocked his view. Gresse testified Phillipe "gunned it" when he proceeded through the intersection.
The testimony reveals that Phillipe was traveling when traffic was heavy. Under La. R.S. 32:24, he was authorized to proceed through a red light since he was using his siren and flashing lights. However, by proceeding to go through a "wall of cars" blocking the median of a heavily trafficked area, he created a situation which was highly dangerous to the other motorists. He had a duty to drive with due regard for the safety of others. The trial judge evidently concluded that Phillipe did not exercise that duty.
La.R.S.32:125 provides:
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

*48 B. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.
In Nelson the court stated 581 So.2d at 347:
A motorist's duty to yield the right of way to emergency vehicles arises only when the motorist observes or hears, or under the circumstances should have observed or heard, the audible or visible warnings of the emergency vehicle.
All of the witnesses, with the exception of Caracci, testified they saw the flashing lights of the ambulance and heard the siren. The trial judge evidently concluded it was clear that Caracci should have observed these warnings and therefore found him to be at fault as well.
We cannot say the trial judge was manifestly erroneous or clearly wrong in apportioning the fault giving Phillipe a greater proportion. She evidently concluded that Phillipe's fault was the result of a conscious choice, while Caracci's fault was due to inadvertence or inattentiveness. She also evidently concluded that Phillipe's disregard for the safety of others under these circumstances constituted the greater degree of fault.
Accordingly, for the reasons stated, the judgment of August 22, 1996 reflecting the jury verdict is set aside; the judgment rendered on August 22, 1996 by the trial court insofar as the granting of a JNOV is vacated; the portion of the judgment rendered on August 22,1996 by the trial court stating her apportionment of fault is affirmed; the amended judgment rendered November 8, 1996, apportioning fault and recognizing the subrogation claim, are affirmed at appellants' cost.
JURY VERDICT AND JUDGMENT IN CONFORMITY THEREWITH, DATED AUGUST 22, 1996 SET ASIDE; TRIAL COURT'S JNOV AND APPORTIONMENT OF FAULT RENDERED AUGUST 22, 1996 VACATED IN PART INSOFAR AS THAT PORTION OF THE JUDGMENT WHICH GRANTS JNOV; TRIAL COURT'S JUDGMENT OF AUGUST 22, 1996 INSOFAR AS TRIAL COURT'S APPORTIONMENT OF FAULT AFFIRMED; AMENDED JUDGMENT OF NOVEMBER 8, 1996 AFFIRMED.
NOTES
[1] Appellants correctly argue there is no evidence of the settlement agreement executed by Decourt and State Farm in the record. Under these circumstances the necessary evidence was provided by a March 25, 1996 judgment and oral stipulations at trial. Although appellants refer to a document entitled, "Receipt, Release and Agreement to Indemnify" we note that the document was never introduced into evidence. This court has no jurisdiction to consider new evidence. Palermo v. Morrison Cafeteria, 94-659 (La.App. 5th Cir. 12/28/94) 648 So.2d 1071, 1073 n. 1.

Appellants also argue that should this court conclude the compromise agreement settled the entire debt and released all parties, then they are owed indemnification from the plaintiff pursuant to the terms of that agreement. The agreement is not in evidence. Furthermore, there is no other basis for indemnification in this case since appellants were found to be at fault while the plaintiff has no fault. As explained in Kesler v. Thedford, 95-1059 (La.App. 3rd Cir. 2/14/96) 670 So.2d 467, 468, writ denied, 96-1216 (La.6/21/96) 675 So.2d 1085:
One who is himself at fault, however, is not due indemnity because liability for indemnity exists only when the party seeking indemnity, the indemnitee, is free from fault and has discharged a debt that should be paid wholly by the indemnitor. The Louisiana Supreme Court in Green v. TACA Int'l Airlines, 304 So.2d 357 (La.1974) has summed up the principle this way: indemnity shifts the entire loss from a tortfeasor only technically or constructively at fault to the person primarily responsible, while contribution apportions the loss among those jointly responsible.
[2] That judgment provided:

IT IS ORDERED, ADJUDGED AND DECREED that the above entitled and numbered cause as between plaintiff, Gertrude Decourt, and defendants Mark Caracci and State Farm Mutual Automobile Insurance Company, be and the same is hereby dismissed as to those defendants only, with full prejudice, each party to bear its own costs, and that plaintiff acknowledges her agreement to subrogate unto Mark Caracci and State Farm Mutual Automobile Insurance Company all of her rights as against Stephen Phillipe, Jefferson Parish Hospital District No. 2, d/b/a East Jefferson General Hospital and Empire Fire & Marine Insurance Company[emphasis added].
[3] Appellant argues Decourt could not assign her personal injury claim. We pretermit a discussion of whether Decourt's personal injury claim is subject to assignment since we hold State Farm is legally entitled to pursue its right to contribution.
[4] La. Civ.Code art. 1800 provides:

A failure to perform a solidary obligation through the fault of one obligor renders all the obligors solidarily liable for the resulting damages. In that case, the obligors not at fault have their remedy against the obligor at fault.
[5] La. Civ.Code art. 1805 provides:

A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by plaintiff.
[6] The trial judge originally struck the jury as to all defendants. This court granted writs and ordered that trial by jury proceed as to Empire, alone. Decourt v. Caracci, et al., 96-177 (La.App. 5th Cir. 2/29/96). The doctrine of "law of the case" does not apply in cases of palpable error or manifest injustice. Vincent v. Ray Brandt Dodge, 94-291 (La.App. 5 Cir. 3/1/95), 652 So.2d 84, writ denied, 95-1247 (La.6/30/95), 657 So.2d 1034. At the time of our ruling Powell, infra had not been decided.
[7] He is also referred to as "Frank."