779 So.2d 59 (2001)
Hazel JACKSON, as Legal Tutrix of the Minor Lakeisha Jackson, Plaintiff-Appellant,
v.
MADISON PARISH SCHOOL BOARD, Joe Walk, Dietra Griffin and Titan Indemnity Company, Defendants-Appellees.
No. 34,228-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2001.
*60 Law Offices of Kidd-Culpepper by Paul Henry Kidd, Monroe, Counsel for Appellant.
Hudson, Potts & Bernstein by Brian P. Bowes, William Craig Henry, Amanda Jill Futch, Monroe, Counsel for Appellees.
Before GASKINS, KOSTELKA and DREW, JJ.
DREW, J.
Lakeisha Jackson appeals a judgment dismissing her lawsuit against the Madison *61 Parish School Board and its liability insurer, Titan Indemnity Company.
We affirm.

FACTS
On January 24, 1994, Lakeisha Jackson was a sixth-grader at McCall Junior High School in Madison Parish. She and her classmates were returning from a morning recess when Jackson was pushed into a wall in a school hallway by a fellow sixth-grader. Jackson alleged that over the course of the next several years she suffered seizures as a result of her head striking the wall.
On January 24, 1995, Hazel Jackson, on behalf of her minor daughter Lakeisha, filed suit against the Madison Parish School Board, Superintendent Joe Walk and McCall Principal Dietra Griffin. The petition was later amended to add Titan Indemnity Company, the School Board's liability insurer, as a defendant. Lakeisha Jackson was substituted as party plaintiff when she reached the age of majority in 1999.
A bifurcated trial was held in August 1999. At the close of plaintiffs case, the court granted the defendants' motion for a directed verdict and dismissed Walk and Griffin as defendants. The case was presented to the jurors after they listened to four days of live and video testimony. Following no more than eight minutes of deliberations, the jury returned a verdict in favor of Titan. The jury answered "No" to the first jury interrogatory, "Do you find that plaintiff proved by a preponderance of the evidence that the defendant, Madison Parish School Board, breached its duty to provide proper supervision of the students at the school?"
Although finding that the School Board was ultimately not liable, the trial judge disagreed with the jury on the issue of whether the School Board breached its duty to supervise. The trial judge stated:
Now then, the court has given this some thought. In some respects my verdict is different from that of the jury. I do findI do find that the school board was negligent in this case. The reason, and I want to explain why I find that the school board was negligent. I want the school board to understand what I'm talking about.
* * * * *
Now then, the next question that the court had to answer was, "Did this particular act of negligence cause the damage, or any damage, to the young lady?" My own particular feeling is that the incident was instigated by Lakeisha herself. I think the testimony pretty well verifies that. I think that the young gentleman that was involved that she went up and grabbed did the natural thing, in that he turned her around and shoved her up against the wall. I don't know that he intended to shove her up against the wall, but apparently he did when he turned her around and her head hit the wall. But whether the negligence of the school board contributed to that or not, I don't think the plaintiff proved by a preponderance of the evidence. The kids in the hall, even if they were in line, the incident could have happened where the teachers down at the other end of the hallway could not have seen it. It happened very quickly. So I think that that was the duty of the school board, or rather that that was the problem that the school board was confronted with. They had a plan in action. There wasmaybe it was not the best plan in the world, but I don't find that the plaintiffs proved by a preponderance of the evidence that that plan was what caused the negligence or the injury to the young lady.
Jackson's motion for a new trial was denied.

RELEVANT TESTIMONY

Lakeisha Jackson
Jackson, age 13 at the time of the incident, was in Kathy Scott's sixth-grade class. The entire second floor at McCall *62 was occupied by her grade. Jackson testified that she did not see any teachers on the second floor when she and her classmates returned from the morning break. At the time, the students were not walking in a straight line up the stairs, and the students were scattered throughout the hallway. The other students were playing and "bum rushing", which apparently involved pushing one person into another.
According to Jackson, another student pushed Jason Thornton into her, causing her to strike her left temple against the wall and leaving a hickey on her head. Later, during cross-examination, Jackson testified that she struck the right side of her head as she was pushed forward into the right side of the hallway. Jackson denied that she attempted to grab Thornton, that Thornton grabbed her and pushed her into the wall or that Thornton's head hit her head. She recalled that the entire incident happened suddenly. Jackson testified that Ms. Scott, the teacher, returned to her classroom five minutes after the incident.

Rayco Larry
Rayco Larry, who was in Ms. Scott's sixth-grade class along with Jackson, testified that Thornton came behind Jackson and pushed her into the wall, causing the right side of Jackson's head to hit the wall. Larry remembered noticing a hickey on the right side of Jackson's head. Larry testified that she did not see any teachers on the second floor as the students were "bum rushing" in the hallway prior to the incident. Larry thought that the incident happened quickly. Larry testified at her deposition that the incident took place on the first floor, but then testified at trial that it happened on the second floor. According to Larry, Ms. Scott returned to her class five to ten minutes after the morning break ended.

Jimmy Johnson
Jimmy Johnson was also in Jackson's class. Johnson saw someone push Thornton into Jackson, causing Jackson to hit the right side of her head against the wall. He did not see Jackson push Thornton, and he did not recall seeing any teachers on the second floor when Jackson hit her head against the wall. Johnson testified that Ms. Scott returned to the class about ten minutes after the incident.

Jason Thornton
Jason Thornton was also in the sixth-grade, but he was in Ms. Hayes' class. Thornton testified that at the end of the break, there was one teacher, Ms. Kendricks, at the top of the stairwell who was directing the students into a single line. After he passed Ms. Kendricks, he heard Inez Wright say, "Lakeisha, look at that fool with all that red on." Thornton was wearing red clothes that day and his back was turned to Jackson and Wright at the time. He did not hear Jackson say anything about colors. Jackson then unexpectedly grabbed Thornton and pinned him against the wall. Thornton responded by grabbing Jackson and pinning her against the wall, causing the back of Jackson's head to hit the wall in the process. Next, Timothy Reese, another student, pushed Thornton, causing Thornton and Jackson to bump the front of their heads against each other. Thornton denied that Jackson hit either side of her head against the wall. Thornton testified that he did nothing to provoke Jackson's actions. He also thought the incident happened quickly.
Thornton did not recall seeing any other teachers in the hallway as he walked toward his classroom. He thought that teachers Marshall, Scott and Hayes were on the first floor when the incident happened. Thornton described how the students would remain in a single-file line when returning from recess if a teacher was present in the hallway; however, if a teacher was not present, the students would run wild. On the date of the incident, the students remained in a single-file line near Ms. Kendricks, but once they were past where she could see down the hallway, they began running wild. Thornton *63 testified that Principal Griffin attempted to persuade him to say that he saw other teachers in the second floor hallway.

Latoya Wright
Latoya Wright was also in Ms. Scott's sixth-grade class. She testified that Jackson told Thornton something about "blood" before grabbing him and pinning him against the wall. While still being pinned, Thornton grabbed Jackson and pushed her into the wall. Latoya recalled that Thornton was walking in front of Jackson at the time, and that the incident happened quickly. Latoya also recalled that sixth-grade teachers Scott and Hayes were sitting on chairs near their classroom doors when the incident occurred. She didn't see the remaining sixth-grade teacher, Ms. Marshall, upstairs. Latoya testified that Jackson thought of herself as a member of the Crips gang. She did not recall Jackson saying, "What is up with all this red?"

Inez Wright
Inez Wright was another student in Ms. Scott's class. She recalled that Thornton was walking in front of Jackson, who was dressed in blue. She heard Jackson say, "Look at him with all the red on." Jackson next pushed Thornton, who then pushed Jackson into the wall, causing Jackson to hit the back of her head against the wall. Inez did not see Timothy Reese push Thornton and did not see Thornton's head hit the front of Jackson's head.
Inez related that she did not notice any signs of injury to Jackson's head. Inez testified that she never heard Jackson talking about Crips or Bloods. Although she testified that she was unaware of any gang activity at school, Inez assumed that by their choices of clothing color, Jackson and Thornton were claiming to be a Crip (blue) or a Blood (red). She described this as not actual gang activity, but more along the lines of play. Inez denied saying, "Look at that fool with all that red on" or making any other remark regarding colors.
Inez testified about the manner in which she and her classmates returned to their classes after the morning recess. Ms. Kendricks stood at the end of the stairway and told the children to get in line. However, the students had gotten out of line and started running after they reached the top of the stairs and passed Ms. Kendricks. Inez testified that Ms. Scott and Ms. Hayes were sitting in the doorways to their classrooms at the time of the incident.

Shaqualla Robinson
Robinson was in Ms. Scott's classroom completing an assignment during the break. She did not see the pushing incident. While she did not know where Ms. Scott was at the end of the break, she remembered seeing Ms. Scott standing at the classroom door during the break.

Loretha Kendricks
Ms. Kendricks, a sixth-grade teacher at McCall, did not witness the incident. She was positioned at the top of the stairwell through which the students returned to the second floor after their morning recess. As the students started up the steps, Ms. Kendricks would instruct them to get in a single-file line. Once they passed her, the students were supposed to stay on the right side of the hallway until they reached their classrooms.
Ms. Kendricks admitted that when she was standing at the top of the stairwell, she was unable to see down the hallway. When most of the students had walked up the stairs, she would then move to a position from where she could look down the hall and the stairs.
Ms. Kendricks testified that student discipline was a major concern at McCall. Methods of managing the children were always discussed at faculty meetings and sixth-grade teacher meetings. Although she did not know where the other three sixth-grade teachers were at the time of the incident, Ms. Kendricks remembered that they were usually outside their classrooms. Each teacher was required to take *64 care of her own students during the break. If the teachers saw one student touch another student, they would order them to stop.

Kathy Scott
At the end of the morning break, Ms. Scott and Ms. Hayes went to their classrooms in accordance with school procedure. They did not take the same stairs as the students, but walked down a first floor hallway to a different stairwell that was closer to their classrooms. Ms. Scott would be in front of her classroom door when the students passed Ms. Kendricks and came down the hall. At the time of the incident, she and Ms. Hayes were standing in front of their classroom doors. Although Ms. Scott testified that she was watching the students in the hallway, she did not see the incident. Ms. Scott did not notice any injury to Jackson later in class.
Ms. Scott testified that the school procedure was that when recess ended, the students were lined up to return to the second floor. Ms. Kendricks was always the first one on the stairs. Ms. Scott was to be already in place outside her classroom before the students walked down the hall. Ms. Kendricks would be approaching her own classroom door and the students would be behind Ms. Kendricks as Ms. Scott took her position in front of her classroom door. The policy was that she, Ms. Hayes and Ms. Marshall were to be in front of their classrooms before the students reached the hallway. Ms. Scott denied sitting in a chair outside her class as the students returned from recess.
At faculty meetings near the beginning of the school year, the teachers were told the proper procedure for the return of students from recess. Principal Griffin would sometimes come on the intercom and tell the teachers what to watch for. Griffin daily instructed the teachers and staff to watch for bum rushing.

Dedra Griffin
Griffin was the Principal of McCall Junior High School on January 24, 1994. She would sometimes tell the students over the intercom, "Keep your hands off other people's children." When she met with the sixth-grade teachers, the four teachers decided that together they would watch the children at recess. The supervision policy was not reduced to writing. The students were lined up at the stairwell when returning from the morning break. Ms. Kendricks always took control of the stairwell since her classroom was nearby. Teachers Scott, Hayes and Marshall were supposed to be positioned outside their classrooms. Griffin did not think it was poor planning to have Ms. Kendricks alone at one end of the hall and the remaining three teachers at the other end because they could see down the hall.

DISCUSSION

Liability
Jackson first argues on appeal that the jury erred in finding that the School Board did not breach its duty to supervise. Jackson further contends that the trial judge erred in finding the School Board was not liable for her injuries. Jackson concedes that at most she was only 20% at fault.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). When factual findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard of review demands great deference to the trier of fact's findings, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
*65 A school board, through its agents and teachers, has a duty to adequately supervise students and thereby protect them from injury. Coleman v. Joyner, 593 So.2d 451 (La.App. 2d Cir.), writ denied, 595 So.2d 657 (La.1992). However, this duty to supervise does not make the school board the insurer of the safety of school children. Adams v. Caddo Parish School Bd., 25,370 (La.App.2d Cir.1/19/94), 631 So.2d 70, writ denied, 94-0684 (La.4/29/94), 637 So.2d 466; Hunter v. Caddo Parish School Bd., 627 So.2d 772 (La.App. 2d Cir.1993); Coleman, supra. Furthermore, constant supervision of all students is not possible, nor is it required, for educators to discharge their duty to provide adequate supervision. Adams, supra; Collins v. Bossier Parish School Board, 480 So.2d 846 (La.App. 2d Cir.1985), writ denied, 481 So.2d 1350 (La. 1986). School boards are required to exercise and maintain only the supervision that is expected of a reasonable person under the circumstances of the particular case. Rambo v. Webster Parish School Bd., 32,447 (La.App.2d Cir.10/27/99), 745 So.2d 770, writ denied, 99-3620 (La.2/18/00), 754 So.2d 971.
The trial judge found that the school board had breached its duty to provide adequate supervision. Ms. Kendricks had the unenviable task of supervising the students in the four sixth-grade classes as they climbed the stairs and spilled into the hallway on the second floor. Ms. Kendricks did all that was possible to fulfill this mission. On the other end of the hall, the three remaining sixth-grade teachers, Scott, Hayes and Marshall, were supposed to be outside their classroom doors awaiting the approach of their students down the hallway. Regardless of whether or not they sat on chairs outside their classrooms while performing this function, not one of these teachers was in a position to have an unobstructed view of the hallway. In fact, Ms. Scott testified that she did not even see the incident despite being in her proper position.
Nonetheless, Jackson was obviously the instigator of the incident. She initiated the sudden chain of events when she grabbed Thornton and pinned him against the wall. Thornton naturally reacted to protect himself by pushing Jackson away and against the wall. The trial judge also heard some testimony that Jackson may have been inspired to act aggressively due to the color of clothing worn by Thornton. This fashion selection of wearing the color red was apparently objectionable to a gang in which some of the students pretended they were members.
The consistent testimony was that this incident happened quickly. Even if teachers had been spread throughout the hallway, it would not have deterred Jackson from bullying a male student, which caused her injury. There is clearly a reasonable factual basis in the record for the trial court's finding that the breach of the duty to supervise did not cause the incident and the resulting injuries. As such, the trial judge was not clearly wrong in his finding of no liability on the part of the Madison Parish School Board.
That the trial court disagreed with the jury's finding is of no consequence. La. R.S. 13:5105(A) provides:
No suit against a political subdivision of the state shall be tried by jury. Except upon a demand for jury trial timely filed in accordance with law by the state or a state agency or the plaintiff in a lawsuit against the state or state agency, no suit against the state or a state agency shall be tried by jury.
Therefore, under the law only the trial court was to determine the liability of the School Board. The jury was allowed to hear the issue of Titan's liability, which only served to set the stage for an inconsistent finding as Titan could only be found vicariously liable for the actions of the School Board.
We note that the trial judge was uncomfortable with a bifurcated trial in this instance. In a July 1999 letter to the attorneys *66 for all parties, the trial judge stated that he believed his previous ruling allowing a jury trial against Titan was incorrect. In the record is a July 20, 1999 memorandum from defendants in support of their motion to strike the request for a jury trial. Nonetheless, the bifurcated trial proceeded as planned.
The Fifth Circuit has addressed the situation when the only defendants are a governmental entity and its liability insurer. That court stated:
The [supreme court in Powell v. Regional Transit Authority, 96-0715 (La.6/18/97), 695 So.2d 1326] analyzed La. R.S. [13:5105] which provides that "[n]o suit against a political subdivision of the state shall be tried by jury." It concluded that the prohibition of jury trials applies to the employee of the governmental entity as well, when the liability is vicarious. We hold that prohibition applies as well to the insurer of a governmental entity when the liability is not independent, but vicarious.
Decourt v. Caracci, 97-393 (La.App. 5th Cir.11/12/97), 704 So.2d 42, writ denied, 97-3095 (La.2/13/98), 709 So.2d 756.
We agree with the Fifth Circuit on this point. No independent basis existed for Titan's liability. Titan would only have been held liable if its insured. Madison Parish School Board, had been held liable. At the commencement of trial, the only other defendants were Superintendent Walk and Principal Griffin, both of whom were employees of the school board. The parties stipulated at trial that at all times Walk and Griffin were in the course and scope of their employment with the School Board. Pursuant to La. R.S. 13:5101, the prohibition against a jury trial equally applied to Walk and Griffin. Therefore, a bifurcated trial was inappropriate in this instance and we need not address the jury's factual finding on the issue of the School Board's liability.

Motion for New Trial
Jackson maintains in her final assignment of error that the trial court erred in denying her motion for new trial. La. C.C.P. art.1972 provides that a new trial shall be granted when the verdict or judgment appears clearly contrary to the law and the evidence or when the jury was bribed or has behaved improperly so that impartial justice has not been done. La. C.C.P. art.1973 states that a new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. The trial court's discretion to grant or deny a motion for new trial under art.1973 is great and will not be disturbed on appeal absent an abuse of that discretion. Robbins v. State ex rel. Dept. of Labor, 31,590 (La.App.2d Cir.2/24/99), 728 So.2d 991; Morehead v. Ford Motor Co., 29,399 (La.App.2d Cir.5/21/97), 694 So.2d 650, writ denied, 97-1865 (La.11/7/97), 703 So.2d 1265.
Jackson first argues that because the judge and jury reached different conclusions regarding whether the School Board breached its duty to supervise, the jury's verdict must be contrary to the law and the evidence. As we have stated previously in this opinion, the jury's factual finding regarding the School Board's liability is irrelevant. Therefore, these are not grounds for justifying the granting of a motion for new trial.
Jackson next argues that the jury engaged in misbehavior because it deliberated for only eight minutes. However, the length of jury deliberation is not indicative of jury misconduct. Drury v. American Honda Motor Co., Inc., 93 1414 (La.App. 1st Cir.12/22/94), 659 So.2d 738, writ denied, 95-1012 (La.6/23/95), 660 So.2d 437. The facts of this case were quite simple. The jury heard testimony from the participants and eyewitnesses to the pushing incident. The only possibly complicated testimony and exhibits concerned the medical evidence. It was unnecessary for the jurors to reach the issue *67 of Jackson's medical injuries, and consequently examine the medical evidence, once they determined the School Board was not liable. There was no jury misconduct in this matter. In any event, because we disregard the jury's factual finding in this instance, even if we assume there had been jury misconduct, such misconduct would have been irrelevant. Jackson's motion for new trial was properly denied.

DECREE
At appellant's cost, the judgment is AFFIRMED.